**DEE CO. et al. v. SUN OIL CO.**

**No. 9812.**

Circuit Court of Appeals, Fifth Circuit.

Jan. 29, 1942.

Harry P. Lawther, of Dallas, Tex., Ford W. Harris, Clarence F. Kiech, Ward D. Foster, and Ford Harris, Jr., all of Los Angeles, Cal., and Royle A. Carter, of San Francisco, Cal., for appellants.

T. L. Foster and Jack A. Schley, both of Dallas, Tex., and Frank S. Busser, of Philadelphia, Pa., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This is a suit for damages for the alleged infringement of claims 1, 2, 3, 4, 7, 8, 9, 10, and 11 of patent number 1426955, which was granted to Lester Carter in 1922. The court below decided that claims 1, 10, and 11 were invalid, and that the remaining claims were valid but not infringed. Judgment accordingly was entered for the defendant, and this appeal was prosecuted from that portion of the judgment adverse to these appellants. The Dee Company is the assignee of the action for infringement of the patent; and the appellee, as purchaser and user of the devices known as the King, Denton, and Henson Separators, is the alleged infringer.

In the early stages of development of the oil industry, the produce of some wells was entirely lost or greatly reduced due to an emulsification of the oil and water into an unmarketable solution. Separation of the solution into its component parts was so difficult and expensive a process that the disposal of the solution as waste was not uncommon. The patent in suit was upon a device designed to prevent this emulsification by delivering the mixture into a separating tank at well pressure, in which the oil and water stratify, the gas escapes at the top of the tank, the water automatically is withdrawn at the bottom, and the oil is withdrawn through an outlet pipe at the top of the oil level into a trap.

Claims 1, 10, and 11 were adjudged invalid because they were found to be anticipated in the prior art. Claim 1 related to the separation and removal of gas from a mixture of gas and liquid, and claims 10 and 11 described a manner of removing foreign matter and gas from the oil. The means of accomplishment of claim 1 consisted of a gravitational separation of the gas and its withdrawal, through an outlet pipe at the top of the separating chamber, into pressure-reducing expansion chambers; withdrawal of the liquid into a trap through which no gas could blow; and means to recapture the oil in the trap.

There was no novelty in this device in 1922. The gravitational separation of the gas from the liquid in a chamber, the upward escape of the gas and the means of its withdrawal, and the operation and design of the trap used for the outflowing liquid were disclosed entirely by Jones patent number 1255018 and by Newbold patent number 689366, both of which preceded the Carter patent. The finding of the lower court in this regard is supported by expert testimony, and a study of the design and operation of these patents reveals that the inconsequential differences between them did not amount to an advance over the prior art subject to patent as invention.

The evidence also supports the finding that the 10th and 11th claims were anticipated. Claim 10 involves a device for the removal of gas and foreign matter from the oil by means of a high pressure chamber, in which gravitational separation takes place, equipped to withdraw the foreign matter and to transmit the oil, under reduced pressure, into a low pressure chamber from which the vapor and the oil could be separately withdrawn. Claim 11 is identical to this claim, except that it additionally claims means for the separation of the gas or vapor from the oil in the low pressure chamber.

Jones patent number 1255018, supra, describes the exact method of this procedure in every essential detail, and Trumble patent number 1269134, Cooper patent number 1140118, and Taber patent number 1363487 are substantially identical thereto. These claims announced no invention in 1922, and the court below correctly held claims 1, 10, and 11 to be invalid by reason of anticipation.

The remaining claims, which were found not to have been infringed, will be considered together. In his application for the patent, Carter stated: "So far as I am aware, I am the first to provide a device which will remove the water and gas from the oil coming from an oil well, while this oil is still under pressure and which will operate entirely automatically under practical conditions." And further,

"By the use of my apparatus, I am able to automatically separate the water and gas from the oil, while the oil is still under pressure."

■ Separation of all the ingredients while under full well pressure contemplated the use of the single separating chamber. Thus, each of these claims related to a device for separating water and gas from a mixture of oil, water, and gas as produced by an oil well, by means of a single separating chamber in which the mixture was allowed to stratify at full well pressure. Furthermore, the testimony of expert witnesses Stokes and Foran was to the effect that, if these claims of the Carter patent were not invalid by reason of anticipation, the only novelty in connection therewith constituting an invention subject to patent was the use of the single separating chamber operating under full well pressure. The court below was justified, therefore, in finding that these claims were expressly limited to such single separating chamber feature operating under full well pressure, and, by reason thereof, the absence of infringement becomes clear.

■ The King and Henson separators used by the appellee operated in this manner: The oil mixture from the well was introduced into a separating chamber in which the gas was permitted to escape from the mixture, and was withdrawn, whereupon the remaining mixture was conducted through a constricted pipe into another chamber in which, by gravitational separation at reduced pressure, the oil collected on the top of the water and was withdrawn in undiluted form.

In the Denton device, the mixture from the well flowed into a separating chamber in which the water was separated from the mixture by gravity and withdrawn, and the gas and oil were conducted at reduced pressure through a common pipe into a second tank in which they were separated.

This dual system of separators was essentially different from, and a clear improvement over, the single separator patented by Carter. The Carter device introduced the flow from the well into the separating tank approximately at its center. The presence of the three ingredients in continual state of simultaneous separation and withdrawal resulted in a constant activity within the chamber, which could not be entirely eliminated by the system of valves and pressure regulators. Always, near the point of introduction, a state of imperfect separation existed, with the result that the oil withdrawn contained a small quantity of gas, water, and foreign matter requiring another separating process.

All of the devices used by the appellee introduced the mixture from the well into the gas chamber at the top of the first separating tank. Thereupon, if the King or Henson devices were used, the gas was withdrawn at the top of the chamber, and the oil and water were conducted into a second chamber where, the mixture being in quiescent state after the gas was eliminated, complete separation by gravitation and withdrawal could be had. If the Denton separator was used, the water only was separated in the tank of original entry, and the oil and gas were flowed under pressure into a pressure reducing throttling device, thence through a common conduit into a second chamber in which they were allowed to stratify and were separately removed.

Since these claims of the Carter patent were limited, by the phraseology of the claims and specifications and by the prior art, to a device consisting of a single separating chamber operating under full well pressure, and since each of the devices used by the appellee provided a dual chamber separating system, the first operating at well pressure and the second at reduced pressure, clearly there was no infringement here of the Carter patent.

■ The question involving the assessments of costs for the taking of depositions was fully presented to the court below. Such matters lie peculiarly within the discretion of the trial court, and its ruling thereon should not be disturbed. The judgment appealed from is affirmed.